*1421 BOGUE, Senior District Judge,
dissenting.
While I agree with the majority’s holding that the debtors did not receive reasonably equivalent value in exchange for the debtor’s financial contributions to the church, I cannot agree with the decision on the merits under RFRA[1], and therefore respectfully dissent.
The first step in RFRA analysis requires the plaintiff to establish that the challenged government action “substantially burdens” their free exercise of religion. If there is no substantial burden, the inquiry ends and the challenger’s petition must fail. In re Newman, 183 B.R. 239, 251 (Bankr.D.Kan.1995) (“If there is no substantial burden, RFRA does not apply.”). Courts have articulated various standards required to make a showing of substantial burden.
I agree with the majority that RFRA does not compel the church to show that tithing is “required” by the church in order to prove a substantial burden. It is enough if the allegedly impinged conduct is motivated by a sincerely held religious belief. Sasnett v. Sullivan, 908 F.Supp. 1429, 1444 (rejecting a “religiously mandated” test in favor of a “religiously motivated” test for purposes of determining substantial burden).[2] That being said, it is important that the substantial burden step in the RFRA analysis is not reduced to a perfunctory determination or foregone conclusion. A searching inquiry is required to “protect[ ] the government from having to justify its regulations under a compelling interest standard if the burden on the asserted practice is incidental or de minim-is.” Id.
As stated by the majority, the governmental action must “significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person’s] individual [religious] beliefs; must meaningfully curtail a [person’s] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person’s] religion.” Op. at 1418. Although it is undisputed that the debtors sincerely believe in tithing and that tithing is central to the religion they practice, I would conclude that the trustee’s action of recovering monies tithed during the year the debtors were insolvent does not substantially burden the free exercise of their religion.
In coming to this conclusion, I note that the act of tithing by the debtors in the year preceding their filing for Chapter 7 protection was in fact executed, i.e., regardless of the eventual outcome, they were given the opportunity to practice their religion as they chose during the year they were insolvent. There was no “constraint of conduct or expression” respecting a central tenet of their belief, nor a curtailment of their ability to “express adherence ” to their faith, nor were they denied reasonable opportunities to “engage in those activities” that were fundamental to their religion. They engaged in the conduct and activity of tithing and fully expressed adherence in their sincere belief in tithing to the church. Unfortunately, the *1422 debtors were insolvent during the year preceding February 1992 when they filed a joint Chapter 7 bankruptcy petition. As such the trustee properly sought to recover that for which the debtors did not receive reasonably equivalent value in exchange for their contributions to the church.
The trustee’s act of recovering the tithes from the church under 11 U.S.C. § 548(a)(2) does not change the fact that the debtors did all they could in the way of expressing and practicing their religious beliefs. I agree with the court in In re Newman, which reasoned:
there is no evidence that section 548(a) prevents the debtors or any other church member from tithing. Indeed, the present record certainly does not suggest that section 548 prevented these debtors from tithing. Equally important, the church has no records which might show that other members did not tithe because of section 548 since no one ever checks to see if members actually do tithe. The funds the trustee seeks to recover have already been tithed to the defendant. The debtors, in all likelihood, continue to tithe to the defendant. The debtors fulfilled their religious obligation by tithing in the year prior to their bankruptcy filing. The statute, by its own operation, does nothing to prevent the debtors’ fulfillment of their personally held religious obligation to tithe and, therefore, does not place a “substantial burden” on the debtors’ practice of their religion.
In re Newman, 183 B.R. at 251 (emphasis added).[3]
Further evidence of the lack of substantial burden is the uncontroverted fact that tithing is not required to fully participate in church services. As noted by the majority, the parties have stipulated that church services were available to all persons regardless of whether any contributions were made. The fact that the debtors’ purely voluntary tithes were ordered retroactively recovered by the trustee does not change the fact that the debtors can attend church services, participate in church programs, and worship and believe as they choose. They can continue to tithe as has been their custom, assuming no additional bankruptcy filings. Given these facts, I cannot conclude the debtor’s free exercise of religion was substantially burdened.
In my view, the church’s failure to demonstrate a substantial burden would end the inquiry and would require affirmance. Yet even if section 548 worked a substantial burden on the debtors’ religious practice, I would conclude that the statute serves a compelling governmental interest and is the least restrictive means of achieving said interest.
Although stated in dicta, I agree with the district court’s view that the bankruptcy code and § 548(a)(2)(A) furthers the compelling governmental interest in allowing debtors to get a fresh start while at the same time protecting the interests of creditors by maximizing the debtor’s estate. In re Young, 152 B.R. 939, 954 (D.Minn. 1993); accord In re Newman, 183 B.R. at 252 (“Section 548(a), and the Bankruptcy Code as a whole, serve a compelling governmental interest.”); In re Navarro, 83 B.R. 348, 353 (Bankr.E.D.Pa. 1988) (the “administration of the bankruptcy system and protection of the legitimate interests of creditors” serves a compelling governmental interest).
It can be fairly said that our nation’s economy depends extensively on the availability of credit to individuals and businesses. Bankruptcy is an extraordinary remedy for *1423 insolvent debtors and oftentimes harsh on creditors. One of the creditor’s few protections are recovery statutes like section 548, which as of today includes a free exercise exception for religious giving in the year preceding filing for bankruptcy.
The majority may be correct when it admonishes that today’s decision may not, by itself, undermine the integrity of the bankruptcy system as a whole. But I share the majority’s apprehension that credit transactions involving persons with views similar to the current debtors may hereinafter involve a more probing and delicate inquiry. Given today’s holding, are cautious potential creditors (including government or government-sponsored creditors) now expected to question applicants in depth regarding the highly personal activity of religious giving? And what if said application is denied on the grounds that the applicant’s religious giving makes extending credit an unwarranted risk? Pragmatic issues aside, it is enough that all of society has a compelling interest in maintaining the balance between debtors and creditors in its current state.
Finally, I would find that section 548(a)(2) is the least restrictive means of furthering the above-articulated compelling interest. Like the present action, In re Newman also involved a trustee’s attempted recovery of tithed funds under 11 U.S.C. § 548(a)(2). In finding that section 548(a)(2) passes the least restrictive means test, the court noted:
The portion of the statute at issue in this case only allows for recovery those transfers of the debtor’s property which occurred within one year of the bankruptcy filing, occurred while the debtor was insolvent, and that were not given in exchange for reasonably equivalent value. Clearly, the statute was drawn in such a way as to balance the ability of the debtor to dispose of property with the need to protect unsecured creditors. For example, if in this ease the debtors had not been insolvent on the dates that the transfers to the defendant took place, then the transfers would not be recoverable. Only when all of the requirements of § 548(a)(2) are met is the trustee able to recover the transfer.
In re Newman, 183 B.R. at 252.
The statute contains four specific elements, all of which are satisfied by the trustee in this case. The statute is narrowly tailored, and the trustee closely followed the proper procedures set forth in the Bankruptcy Code for avoiding and recovering the donations, and took no action against these debtors which would not be taken against any other transferee in the same factual situation.
In conclusion, I would hold that the trustee has satisfied the requirements of RFRA and would affirm the district court.

. I understand that the constitutionality of RFRA is not before us as this case is currently postured. That notwithstanding, I feel compelled to note the unusual specter of employing the analytical framework of RFRA, where the author of the majority opinion has indicated his belief that RFRA is unconstitutional. Hamilton v. Schriro, 74 F.3d 1545, 1557 (8th Cir.1996)(McMillian, J., dissenting). Having reviewed and studied the author's thorough opinion in Hamilton, I am inclined to agree with his position. Further, cases relied on by the majority, regardless of the resolution on some issues, have ultimately found RFRA to be unconstitutional. In re Tessier, 190 B.R. 396, 406-07 (Bankr.D.Mont.1995). The constitutionality issue is particularly relevant in that employing RFRA, as opposed to the analysis under Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), "caused” the reversal in the current case, at least as I understand the Smith case. Put another way, "but for the passage of RFRA, the [church] could not have succeeded on [its] free exercise challenge to [11 U.S.C. § 5489(a)(2)].” Hamilton, 74 F.3d at 1561 (acknowledging that pre-RFRA standards were much less onerous as far as the government was concerned).
Given the statute’s dubious constitutionality, I believe we should have requested supplementary briefing and hearing, along with certification to the Attorney General, on the constitutionality of RFRA.

. I also share the majority’s concern as to whether courts can constitutionally determine "the parameters of religious belief, what beliefs are important or fundamental, and whether a particular practice is of only minimal religious significance...” Op. at 1418.

. It cannot be denied that the work of religious organizations may be more important now than ever before. Contributing, financially or otherwise, to further the mission of a religious organization is a laudatory practice. That being said, religious contributions cannot be considered beyond reproach or regulation in all circumstances. United States v. Lee, 455 U.S. 252, 261, 102 S.Ct. 1051, 1057, 71 L.Ed.2d 127 (1982) ("... every person cannot be shielded from all burdens incident to exercising every aspect of the right to practice religious beliefs. When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity.”). The debtors should be commended for their commitment to contributing to the church. There is no dishonor in the fact that the tithes they offered during insolvency ought to be recovered by the trustee. The reality is that the tithed money should be part of the estate available to creditors, who in good faith, advanced money, goods or services to the debtors upon the condition of repayment.